David J. Miclean (CAB# 115098/miclean@fr.com)
Christina D. Jordan (CAB# 245944/cjordan@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California  94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Defendants
BANK OF AMERICA, N.A. and
BANK OF AMERICA TECHNOLOGY
AND OPERATIONS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IP SOLUTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a National Banking Association member, and BANK OF AMERICA TECHNOLOGY AND OPERATIONS, INC., a Delaware corporation,<br><br>Defendants. | Case No. 07-CV-2774 (JF)<br><br>**DEFENDANTS BANK OF AMERICA, N.A., AND BANK OF AMERICA TECHNOLOGY AND OPERATIONS, INC.'S ANSWER TO PLAINTIFF IP SOLUTIONS, INC.'S COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For its answer to the Complaint, Defendants Bank of America, N.A. and Bank of America Technology and Operations, Inc. (collectively, "Defendants") plead as follows.

Defendants deny each and every allegation contained in the Complaint that is not expressly admitted below. Any factual allegation admitted below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably follow from the admitted facts.  Defendants particularly deny that Plaintiff IP Solutions, Inc. ("IPS" or "Plaintiff") is entitled to the relief requested, or to any other.

## THE PARTIES

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, and on that basis deny them.

1

2.      Defendants admit that Bank of America, N.A. ("Bank of America") is a National Banking Association member organized under the laws of the United States.  Defendants further admit that Bank of America's principal place of business is Charlotte, North Carolina.  Defendants deny the remaining allegations of paragraph 2.

3.      Defendants admit that Bank of America Technology and Operations, Inc. ("BATO") is a corporation organized under the laws of the State of Delaware.  Defendants further admit that BATO's principal place of business is in Charlotte, North Carolina.  Defendants deny the remaining allegations of paragraph 3.

## JURISDICTION AND VENUE

4.      Defendants deny that the Court has subject matter jurisdiction over IPS' federal copyright claims, due to IPS' lack of ownership of copyright in the asserted materials and due to the parties' controlling forum selection agreement.  Defendants also deny that this Court has supplemental jurisdiction over IPS' state law claims because the Court lacks subject matter jurisdiction over the copyright claim.  Defendants further deny that this Court has supplemental jurisdiction over IPS' state law claims because the state law claims are fully preempted by 17 U.S.C. § 106, and the parties' controlling forum selection agreement further precludes the exercise of jurisdiction over this matter.

5.      Defendants deny that venue is appropriate in this district due to the controlling forum selection agreement between the parties.

## INTRADISTRICT ASSIGNMENT

6.      Defendants deny that this case is subject to District-wide assignment pursuant to Civil L. R. 3-2(c) and General Order 44 of the Northern District of California, because venue in this District is improper due to the controlling forum selection agreement between the parties.

## OPERATIVE FACTS

7.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7, and on that basis deny them.

8.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8, and on that basis deny them.

2

9.    Defendants admit that IPS alleges that it registered for copyrights in the "Project Management Master – Instructor Guide" and "Project Management Master – Participant Guide" (collectively, the "PMM Materials") with the Copyright Office under U.S. Copyright Registration Nos. TXu-339-597 and TXu-339-598. Defendants have not had an opportunity to review the specimens attached to the copyright applications, and on that basis deny that these registrations are valid or that IPS owns valid copyrights and other intellectual property assets in the PMM Materials.

10.    Defendants deny that BATO and IPS entered into a contract on November 13, 2003. However, Defendants admit that BATO and IPS entered into a General Services Agreement ("Agreement") on November 17, 2003. Defendants deny that paragraph 10 of the Complaint accurately describes the terms and conditions of the Agreement between Defendants and IPS and on that basis deny the remaining allegations in paragraph 10.

11.    Defendants admit that Bank of America and IPS entered into an Agreement Addendum ("Addendum") on March 8, 2005. Defendants further admit that under the Addendum, Bank of America assumed BATO's obligations under the Agreement. Defendants deny that paragraph 11 accurately describes the terms and conditions of the agreements between Defendants and IPS on that basis deny the remaining allegations in paragraph 11.

12.    Defendants deny that Bank of America and IPS entered into a second Agreement Addendum on March 8, 2005. However, Defendants admit that Bank of America and IPS entered into a second Agreement Addendum ("Second Addendum") on March 26, 2005. Defendants further admit that the Second Addendum attached and incorporated by reference a Statement of Work ("SOW #3"). Defendants deny that paragraph 12 accurately describes the terms and conditions of the agreements between Defendants and IPS and on that basis deny the remaining allegations in paragraph 12.

13.    Defendants deny that paragraph 13 accurately describes the terms and conditions of the agreements between Defendants and IPS and on that basis deny the allegations in paragraph 13.

14.    Denied.

15.    Defendants admit that Bank of America sent a letter to IPS on February 27, 2007, explaining that Bank of America was not infringing and had not infringed any intellectual property

3

1    rights belonging to IPS.  Defendants are without knowledge or information sufficient to form a

2    belief as to the truth of the remaining allegations in paragraph 15, and on that basis deny them.

3        16.    Denied.

## FIRST CAUSE OF ACTION
### (Copyright Infringement)

6        17.    Defendants reallege and incorporate by reference paragraphs 1-16, above.

7        18.    Defendants deny that Bank of America has copied, reproduced, or distributed, or

8    aided and abetted the copying, reproduction, or distribution, of IPS' PMM Materials, and further

9    deny that IPS owns a valid copyright in the PMM Materials.  On these bases, Defendants deny the

10   allegations of paragraph 18.

11       19.    Denied.

12       20.    Denied.

13       21.    Denied.

14       22.    Denied.

15       23.    Denied.

16       24.    Denied.

17       25.    Denied.

18       26.    Denied.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

21       27.    Defendants reallege and incorporate by reference paragraphs 1-26, above.

22       28.    Denied.

23       29.    Denied.

## THIRD CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

26       30.    Defendants reallege and incorporate by reference paragraphs 1-29, above.

27       31.    Denied.

28       32.    Denied.

4

## AFFIRMATIVE DEFENSES
### First Affirmative Defense (Non-Infringement)

33.    Defendants do not infringe and have not infringed, either directly, vicariously, or contributorily, IPS' intellectual property rights in the PMM Materials.

### Second Affirmative Defense (Non-Copyrightable Subject Matter)

34.    IPS has asserted copyright protection in the PMM Materials.

35.    On information and belief, the PMM Materials are works of utility that do not constitute copyrightable subject matter under 17 U.S.C. § 102.

36.    Therefore, IPS lacks ownership of a valid copyright in the PMM Materials, and the allegations in IPS' Complaint do not and cannot constitute copyright infringement.

### Third Affirmative Defense (Lack of Substantial Similarity)

37.    On information and belief, Defendants have not copied, reproduced, or distributed any works having substantial similarity to any copyrightable elements of the PMM Materials.

38.    Therefore, Defendants have not committed actionable copying with respect to the PMM Materials, and the allegations in IPS' Complaint do not and cannot constitute copyright infringement.

### Fourth Affirmative Defense (Lack of Ownership)

39.    On information and belief, IPS and Bank of America collaborated to develop and customize the PMM Materials for Bank of America's internal use and ownership.

40.    Alternatively, under 17 U.S.C. § 101, the customized PMM Materials constitute a joint work of which Bank of America is a joint author, and in which Bank of America holds joint ownership.

41.    Therefore, IPS is barred from asserting any copyright in the customized PMM Materials against Bank of America, and the allegations in IPS' Complaint do not and cannot constitute copyright infringement.

### Fifth Affirmative Defense (Lack of Subject Matter Jurisdiction)

42.    This Court's subject matter jurisdiction over this action rests solely upon IPS' federal copyright infringement claim.

5

43.    Because IPS lacks ownership of any valid copyrights in the PMM Materials, IPS is barred from asserting an action for copyright infringement against Bank of America.

44.    Therefore, this Court lacks subject matter jurisdiction over this action, and IPS' Complaint should be dismissed.

### Sixth Affirmative Defense (17 U.S.C. § 412 – Lack of Entitlement to Statutory Damages, Enhanced Damages, and Attorneys' Fees Under Copyright Law)

45.    Under 17 U.S.C. § 412, IPS is barred from asserting against Defendants any claims for statutory or enhanced damages under 17 U.S.C. § 504 and any claims for costs or attorneys' fees under 17 U.S.C. § 505.

### Seventh Affirmative Defense (Improper Venue)

46.    Section 21 of the Agreement specifies that the Agreement is governed by the laws of the State of North Carolina.  Section 21 further specifies that IPS and Bank of America submit to the exclusive jurisdiction of the courts of the State of North Carolina.

47.    IPS brought the present action in the Northern District of California, in violation of the Agreement's forum selection clause.

48.    Therefore, venue in this District is improper, and IPS' Complaint should be dismissed.

### Eighth Affirmative Defense (License Agreement)

49.    On information and belief, Bank of America entered into the Agreement with IPS for the purpose of obtaining materials for use in conducting internal project management courses for Bank of America employees.

50.    Section 25 of the Agreement granted Bank of America a license to use any of IPS' intellectual property embodied in any Work Product as necessary or desirable for Bank of America's full use of the Work Product.

51.    On information and belief, any use by Bank of America of IPS' intellectual property was necessary and desirable for its full use of the Work Product.

52.    Based on the terms of the Agreement, the course of dealing with IPS, and accepted industry practice, any use by Bank of America of IPS' intellectual property was necessary and

1    desirable for Bank of America's full use of the Work Product in a manner consistent with the

2    purpose and intent of the Agreement.

3        53.    Therefore, any use by Bank of America of IPS' intellectual property did not exceed

4    the scope of the license, express and/or implied, provided in the Agreement, and the allegations in

5    IPS's Complaint cannot constitute copyright infringement.

6    **Ninth Affirmative Defense (Preemption of Breach of**
     **Covenant of Good Faith and Fair Dealing Claim under 17 U.S.C. § 106)**
7

8        54.    On information and belief, IPS based its allegations relating to breach of the covenant

9    of good faith and fair dealing on the Agreement and on Bank of America's alleged use of the PMM

10   Materials.

11       55.    IPS has not alleged any extra element of its breach of covenant claim sufficient to

12   make the claim qualitatively different from a claim for copyright infringement.

13       56.    Therefore, IPS' claim for breach of the covenant of good faith and fair dealing should

14   be dismissed as preempted by federal copyright law under 17 U.S.C. § 106.

15   **Tenth Affirmative Defense (Failure to State a Claim)**

16       57.    As a matter of law, IPS' Complaint fails to state facts sufficient to support any claim

17   upon which relief can be granted against Defendants.

18   **Eleventh Affirmative Defense (Lack of Mutual Consent)**

19       58.    On information and belief, IPS and BATO did not mutually agree in the same sense

20   upon one or more material terms in the Agreement.

21       59.    Therefore, the Agreement is not enforceable, because there was no mutual consent

22   between the parties.

23   **Twelfth Affirmative Defense (Laches)**

24       60.    On information and belief, IPS waited for an unreasonably long period of time before

25   bringing the present action against Defendants.

26       61.    IPS's delay in seeking to enforce its alleged rights resulted in material prejudice to

27   Defendants.

28       62.    Therefore, IPS' claims are barred by the doctrine of laches.

7

**Thirteenth Affirmative Defense (Consent)**

63.    On information and belief, IPS had knowledge of, and expressly consented and agreed to, any use by Bank of America of works in which IPS owns a valid copyright, including any alleged use of the PMM Materials.

64.    Therefore, IPS's claims are barred by the doctrine of consent.

**Fourteenth Affirmative Defense (Waiver)**

65.    On information and belief, IPS had knowledge of, and expressly consented and agreed to, Defendants' conduct about which IPS is now complaining.

66.    Therefore, IPS has waived any claim arising out of such conduct.

**Fifteenth Affirmative Defense (Fair Use)**

67.    On information and belief, IPS and Bank of America used the PMM Materials for the purpose of creating a project management course specifically adapted to Bank of America's needs, pursuant to the terms of the Agreement and Addendums thereto.

68.    On information and belief, the PMM Materials constituted works of utility that were not themselves the subject of a valid copyright.

69.    On information and belief, the amount and substantiality of the PMM Materials used was limited to those components necessary to create a project management course specifically adapted to Bank of America's needs, pursuant to the terms of the Agreement and Addendums thereto.

70.    On information and belief, any inclusion of material from the PMM Materials in the materials for Bank of America's project management course had a negligible effect upon the potential market for or value of the PMM Materials, because the Bank of America project management course was specifically adapted to Bank of America's needs, and could not be used in any other context.

**<u>COUNTERCLAIMS</u>**

For its Counterclaims against IPS, Defendants allege the following on information and belief.

8

## THE PARTIES

1.      Bank of America is a corporation organized under the laws of the State of Delaware, with its principal place of business in Charlotte, North Carolina.

2.      BATO is a corporation organized under the laws of the State of Delaware, with its principal place of business is in Charlotte, North Carolina.

3.      In its Complaint, IPS alleges that it is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Mateo County, California.  On information and belief, IPS' principal business consists of delivering management training courses and solutions designed to improve workplace performance.

## JURISDICTION AND VENUE

4.      In its Complaint, IPS alleges copyright infringement, breach of contract, and breach of the covenant of good faith and fair dealing.

5.      This Court has supplemental jurisdiction over Defendants' Counterclaims under 35 U.S.C. § 1367, because the Counterclaims arise out of the same case or controversy as IPS' claims alleging copyright infringement.

6.      Although venue is not proper in this District for the claims asserted by IPS in its Complaint, venue is proper for these Counterclaims pursuant to 28 U.S.C. § 1391(b) and 1400(b).

## OPERATIVE FACTS

7.      In or about November of 2003, BATO originally contacted IPS to obtain information about the Stanford Advanced Project Management ("SAPM") program.  SAPM was a project management course that IPS had formed in partnership with Stanford University.  BATO decided to hire IPS to deliver a SAPM course that BATO could conduct internally for its employees.

**A.      BATO and IPS Signed a General Services Agreement, Which Granted Bank of America Exclusive Ownership of All "Work Product."**

8.      To this end, BATO and IPS executed a General Services Agreement ("Agreement"), effective as of November 17, 2003, that set forth the terms and conditions of the parties' relationship.  The Agreement attached and expressly incorporated by reference an Agreement Addendum and Statement of Work #1 ("SOW #1").  A true and correct copy of the Agreement and

9

1   SOW #1 is attached as Exhibit 1.  Section 1 of SOW #1 specified that the purpose of the Agreement

2   was to "provide on-site instructor-led Stanford Advanced Project management (SAPM) education to

3   Bank of America."  SOW #1 set forth the terms and conditions under which IPS would deliver the

4   pilot classes to BATO for approval.

5            9.        Section 25 of the Agreement provided that Bank of America would exclusively own,

6   as works made for hire, all "Work Product" to the full extent permitted by law.  The Agreement

7   defined "Work Product" broadly to include all information, data, and materials, and all intellectual

8   property rights therein, that were originated or prepared by or for IPS pursuant to the Agreement, or

9   that were within the scope of the services IPS was obligated to render to Bank of America under the

10  Agreement.

11           10.       Under Section 25, IPS assigned Bank of America all right, title, and interest in and to

12  any Work Product that did not qualify as works made for hire as a matter of law, including all of

13  IPS' intellectual property in such Work Product.  IPS further granted Bank of America a broad

14  license to use any of IPS' intellectual property embedded in the Work Product as necessary or

15  desirable for Bank of America's full use of the Work Product.

16           11.       On or about March 8, 2005, IPS and Bank of America executed a second Agreement

17  Addendum and Statement of Work #2 ("SOW #2"), under which Bank of America assumed

18  BATO's obligations under the Agreement.  A true and correct copy of the Addendum and SOW #2

19  is attached as Exhibit 2.  The Addendum and SOW #2 were expressly incorporated by reference

20  into the Agreement.

21  **B.        Because IPS' PMM Materials Were Insufficient to Meet Bank of America's**
22  **Training Needs, the Parties Decided to Collaborate to Develop and Customize**
    **the Project Management Foundation Course Materials.**
23

24           12.       In early March of 2005, IPS staged a walk-through of the pilot for Bank of

25  America's SAPM course.  At this time, IPS also delivered two course manuals to Bank of America

26  entitled "Project Management Master – Instructor Guide" and "Project Management Master –

27  Participant Guide" (collectively, the "PMM Materials").

28

DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT
Case No. 07-CV-2774 (JF)

13.    Upon observing the pilot and reviewing the PMM Materials, Bank of America found that significant customization was necessary to meet its particular training needs. In particular, at least six of the eight modules within the two course manuals needed to be significantly modified.

14.    Bank of America and IPS agreed to work together to appropriately develop and customize the PMM Materials. Bank of America formed a team of its own associates to work with IPS on the development and customization. The parties renamed the course as Bank of America's Project Management Foundations ("PMF") course.

15.    Bank of America and IPS decided that Bank of America's PMF course would be taught by Bank of America's own associates. The parties agreed that IPS would provide "Train-The-Trainer" sessions, in which IPS would train a particular Bank of America associate as a "Master Trainer." This Master Trainer would, in turn, train other Bank of America associates to be the actual facilitators of the PMF course ("PMF Facilitators").

**C. IPS and Bank of America Signed Statement of Work #3, Which Set Forth The Terms and Conditions of the Project Management Foundation Course Development.**

16.    Pursuant to these discussions, IPS and Bank of America executed a third Agreement Addendum and Statement of Work #3 ("SOW #3") on or about March 26, 2005. A true and correct copy of the Addendum and SOW #3 is attached as Exhibit 3. The Addendum and SOW #3 were expressly incorporated by reference into the Agreement.

17.    SOW #3 set out various deliverables required from IPS' for Bank of America's PMF Course. In particular, SOW #3 set out a timeline for IPS to develop and customize of the PMM Materials (i.e., the Instructor and Participant Guides); deliver the materials for the PMF pilot course and actually conduct the pilot course; and conduct Train-The-Trainer sessions. SOW #3 provided that the PMF materials would be further customized based on feedback from the Pilot and Train-The-Trainer stages.

18.    SOW #3 also set out IPS' fees for each of its deliverables. IPS was to receive approximately $37,500 for its contribution to the development and customization of the Participant and Instructor Guides. IPS was to receive a flat fee of $16,000 for the pilot and a flat fee of $25,000 for every four IPS instructors provided to conduct the Train-The-Trainer sessions. Additionally,

11

1   IPS was to receive $450 for each set of PMF pilot course materials that it delivered and shipped for

2   use by the pilot course participants.

3       **D.  IPS and Bank of America Collaborated Under the Agreement to Create the Project**
        **Management Foundation Course Materials, Which Constituted Work Product**
4       **Owned by Bank of America.**

5       19.     During April and May of 2005, representatives from both Bank of America and IPS

6   collaborated to develop and customize the PMM materials for Bank of America's PMF course.  As

7   a result of Bank of America's participation in creating the PMF materials, Bank of America

8   understood that it exclusively owned the PMF materials pursuant to the terms of the Agreement.  In

9   particular, Bank of America understood that the PMF materials qualified as "Work Product," to

10  which Bank of America had exclusive ownership.

11      20.     After the PMF materials had been created through the collaborative efforts of Bank

12  of America and IPS, IPS staged pilots of the PMF course at Bank of America's facilities in

13  Jacksonville, Florida and Charlotte, North Carolina.  IPS also conducted Train-The-Trainer sessions

14  in which it trained a Bank of America associate as the Master Trainer.

15      21.     After the Train-The-Training sessions, Bank of America's Master Trainer trained

16  various Bank of America associates to be PMF Facilitators.  These PMF Facilitators then conducted

17  Bank of America's PMF course internally at various Bank of America locations.

18      22.     Bank of America fully compensated IPS according to the terms of the Agreement for

19  IPS' contributions to the development and customization of the PMF materials, as well as for the

20  PMF pilot, the Train-The-Trainer instructors, and the $450 fee for set of PMF pilot course

21  materials.

22      **E.  Communications between IPS and Bank of America Leading to the Present**
        **Lawsuit.**
23

24      23.     No further communications occurred between Bank of America and IPS regarding

25  Bank of America's PMF course for over one year.  On or about July 20, 2006, IPS and Bank of

26  America representatives held a meeting in which IPS offered to "assist" Bank of America with its

27  PMF courses.  Bank of America thanked IPS, but conveyed its understanding that the provisions of

28

1    the Agreement regarding the PMF course had been fulfilled and that neither party had any

2    remaining obligations.

3        24.    On or about August 15, 2006, IPS and Bank of America held another meeting in

4    which IPS expressed its opinion that the Bank's continued deployment of the PMF courses violated

5    IPS' intellectual property rights.  The parties held another meeting on or about September 15, 2006,

6    in which Bank of America asked IPS to provide a written statement documenting its concerns.

7        25.    On or about October 2, 2006, IPS sent Bank of America an email message, in which

8    it asked Bank of America about the parties' "next steps."   Bank of America reiterated that it was

9    waiting for IPS' written statement.

10        26.    On or about December 22, 2006, Bank of America received a letter from IPS (which

11    was dated December 8, 2006).  In this letter, IPS asserted that material from the PMM Materials had

12    been built into Bank of America's PMF course materials.  IPS asserted that it owned a copyright in

13    the PMM Materials.  IPS further asserted that, despite the language of the Agreement -- which

14    required Bank of America to pay IPS $450 for each set of PMF pilot course materials that it

15    produced and shipped for use by the participants of the pilot course – Bank of America was

16    obligated to pay IPS $450 for every Bank of America *employee* who had ever taken any Bank of

17    America PMF course.

18        27.    On or about February 27, 2007, Bank of America sent IPS a responsive letter.  Bank

19    of America explained that the materials for the PMF course had been created jointly by Bank of

20    America and IPS under the Agreement, that the PMF materials were therefore Work Product

21    exclusively owned by Bank of America, and that the Agreement further granted Bank of America a

22    license to use any of IPS' intellectual property that was embedded in the Work Product.  Bank of

23    America reminded IPS that IPS had been fully compensated for its services pursuant to the terms of

24    the Agreement.  Bank of America pointed out that it was not claiming ownership of any of IPS'

25    intellectual property that was embedded in the PMF materials, but was simply using any such

26    intellectual property pursuant to the license granted under the Agreement.

27

28

28.     On May 22, 2007, IPS filed the present lawsuit against Bank of America.  IPS'
Complaint asserted claims for copyright infringement, breach of contract, and breach of the
covenant of good faith and fair dealing.

## FIRST COUNTERCLAIM FOR RELIEF
### (Declaratory Judgment of a Valid and Enforceable Contract With Respect to Surviving Obligations)

29.     Defendants reallege and incorporate by reference paragraphs 1-28, above, as if they
are fully set forth here.

30.     Both BATO and IPS were legally capable of entering into the Agreement.

31.     The parties reached an agreement on all material terms on or about November 17,
2003.

32.     The Agreement was supported by valuable consideration.

33.     Section 21 of the Agreement clearly specified that the parties submitted themselves
to the exclusive jurisdiction of the courts of the State of North Carolina.

34.     Based on IPS' filing of this suit and Defendants' affirmative defenses, an actual
controversy has arisen and now exists between IPS and Defendants as to whether the Agreement is
valid and enforceable with respect to its surviving provisions, including Section 21 regarding
exclusive jurisdiction.

## SECOND COUNTERCLAIM FOR RELIEF
### (Breach of Contract)

35.     Defendants reallege and incorporate by reference paragraphs 1-34, above, as if they
are fully set forth here.

36.     IPS materially breached the terms of the Agreement by bringing the present action in
this Court.

37.     As a direct and proximate consequence of IPS' breach, Defendants have suffered and
will suffer irreparable injury in an amount yet to be determined, but that includes at least
Defendants' fees and costs in defending this action.

///

14

## THIRD COUNTERCLAIM FOR RELIEF
### (Specific Performance)

38.     Defendants  reallege and incorporate by reference paragraphs 1-37, above, as if they are fully set forth here.

39.     By continuing to prosecute this action, IPS has materially breached the terms of the Agreement and remains in breach by failing to perform its obligations under, at least, Section 21 of the Agreement.

40.     Damages alone are inadequate to compensate Defendants for IPS' breach of the Agreement.

41.     Defendants are entitled to specific performance by IPS of its obligations regarding Section 21 of the Agreement, which require IPS to promptly dismiss this action.

## FOURTH COUNTERCLAIM FOR RELIEF
### (Declaratory Judgment of Non-Infringement)

42.     Defendants reallege and incorporate by reference paragraphs 1-41, above, as if they are fully set forth here.

43.     Section 25 of the Agreement clearly specified that Bank of America exclusively owned all Work Product, which was defined under Section 1.11 as being all materials originated or prepared by or for IPS pursuant to the Agreement.  Section 25 further provided that IPS granted Bank of America a perpetual license to use any of IPS' intellectual property rights embedded in the Work Product as necessary or desirable for the full use of the Work Product.

44.     IPS admits that it provided the PMM Materials to Bank of America pursuant to the Agreement. The PMF course materials, which were developed and customized from the PMM Materials jointly by Bank of America and IPS, qualify as Work Product.  Therefore, Bank of America is the exclusive owner of the PMF materials under Section 25 of the Agreement, and has a license to use any of IPS' intellectual property embedded in the Work Product as necessary for the full use of the Work Product.

45.     Based on IPS' filing of this suit and Defendants' affirmative defenses, an actual controversy has arisen and now exists between IPS and Defendants as to whether the Agreement is

15

valid and enforceable with respect to its surviving provisions, including Section 25 regarding Bank of America's exclusive ownership of Work Product and license to IPS' intellectual property embodied in the Work Product.

## FIFTH COUNTERCLAIM FOR RELIEF
### (Declaratory Judgment of Ownership of the Project Management Foundation Materials by Bank of America)

46.    Defendants reallege and incorporate by reference paragraphs 1-45, above, as if they are fully set forth here.

47.    Section 25 of the Agreement clearly specified that Bank of America exclusively owned all Work Product, which was defined under Section 1.11 as being all materials originated or prepared by or for IPS pursuant to the Agreement.

48.    As shown by SOW #3, the PMF course materials were developed and customized jointly by Bank of America and IPS, pursuant to the Agreement.  Therefore, the PMF course materials qualify as Work Product under the Agreement, and Bank of America is the exclusive owner of the PMF materials under Section 25 of the Agreement.

49.    Based on IPS' filing of this suit and Defendants' affirmative defenses, an actual controversy has arisen and now exists between IPS and Defendants as to whether Bank of America is the exclusive owner of the PMF course materials.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that this Court:

1.  Dismiss IPS' Complaint with prejudice;

2.  Enjoin IPS from proceeding with this action and from asserting against Defendants any additional claims for infringement of the PMM Materials at issue;

3.  Declare and adjudge that the Agreement is valid and enforceable;

4.  Award Defendants specific performance of the Agreement;

5.  Declare Defendants to be the exclusive owners of the PMF course materials;

6.  Award Defendants damages caused by IPS' breach of the Agreement;

7.  Award Defendants their costs and reasonable attorneys' fees incurred in defending against IPS' Complaint; and

16

1        8.   Award Defendants any such further relief as the Court may deem just and proper.

2

3   Dated:  July 31, 2007                          FISH & RICHARDSON P.C.

4

5                                                  By:  /s/ Christina Jordan
                                                        Christina Jordan
6

7                                                  Attorneys for Defendants
                                                   BANK OF AMERICA, N.A. AND
8                                                  BANK OF AMERICA TECHNOLOGY
                                                   AND OPERATIONS, INC.
9   50428158.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT
Case No. 07-CV-2774 (JF)